# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In Re:

**DOW CORNING CORPORATION,**

     **Reorganized Debtor.**

**Civil Action No. 05-30469-DT**

**Honorable Denise Page Hood**

_____

     **Beverly J. Ezra,**

        **Plaintiff,**

v.

     **DCC Litigation Facility, Inc.,**

        **Defendant.**

_____/

## ORDER GRANTING MOTIONS TO EXCLUDE EXPERT OPINIONS, GRANTING RENEWED MOTION FOR SUMMARY JUDGMENT, DENYING REQUEST FOR SANCTIONS AND JUDICIAL NOTICE AND DISMISSING ACTION

# I.   BACKGROUND/FACTS[1]

This matter is before the Court on renewed motions filed after the matter was remanded back to this Court from the Sixth Circuit Court of Appeals.[2]  Responses and replies have been filed.

Plaintiff Beverly J. Ezra opted out of the settlement process before the Settlement Facility-Dow Corning Trust ("SF-DCT") as provided under the Dow Corning Amended Joint Plan of Reorganization ("Plan").  The Effective Date for the confirmed Plan was June 1, 2004. (April 2, 2004 Order Establishing Effective Date, Bankruptcy Case No. 95-20512)  Pursuant to the Plan, claimants who choose to litigate their claims must file claims against the DCC Litigation Facility ("Litigation Facility").  (Plan, Art. 5.4, 6.1)  After unsuccessful attempts to resolve the matter under the procedures set forth in the Plan, the case was certified to go forward with trial preparation on October 29, 2009.  (Doc. No. 19)  The Court issued scheduling orders in this matter.  On May 7, 2010, Ezra filed a Complaint and the Litigation

---

[1] The following published opinions provide a detailed history of this bankruptcy action: *In re Dow Corning Corp.,* 255 B.R. 445 (E.D. Mich. 2000), 86 F.3d 482 (6th Cir. 1996), 113 F.3d 565 (6th Cir. 1997), 280 F.3d 648 (6th Cir. 2002), and 456 F.3d 668 (6th Cir. 2006).

[2] Plaintiff's Motions to Take Depositions (Nos. 55, 57); Plaintiff's Motion to Compel (No. 56); Defendant's Motion for Leave (No. 60); Defendant's Motion for Summary Judgment Based on Plaintiffs' Failure to Provide Evidence on Causation (No. 61); Defendant's Motion for Summary Judgment Following Dismissal of Drs. Busch & Fiechner (No. 62); Defendant's Motion for Summary Judgment Based on Striking Dr. Pierre Blais as an Expert (No. 64).

Facility filed an Answer on May 14, 2010.  Discovery was held, in addition to mediation and settlement conferences held under the guidance of the Special Master.

Ezra filed the instant action claiming various illnesses and medical conditions, including: muscle aches and pains all over her body; metallic taste in the mouth; chronic problems with diarrhea; dizziness/vertigo problems; chronic low-grade fevers; frequent yeast infections; chronic fatigue; severe headaches; loss of taste and smell; memory loss and loss of  concentration; frequent gastrointestinal problems; sinus problems with ear aches; difficulty swallowing; problems with choking; easily bruised with slow healing of bruises and cuts; spider veins on legs and feet; coldness of hands, fingers, feet, toes and face; muscle spasms; problems with rashes; tingling and numbness in extremities; difficulty breathing; unexplained dental problems; excessive hair loss; as well as emotional, physical and financial losses.  Ezra claims these conditions were caused by the Surgitek gel-filled silicone elastomer breast implants placed in 1984 and/or the ICU textured saline implants which replaced the Surgitek implants in 1993, and/or the raw silicone materials used to manufacture her implants. (Complaint, Doc. No. 26; Doc. No. 31, Motion, Ex. 1, Questionnaire, Pg ID 2120-2120)

On March 28, 2013, the Court entered an Order Granting the Litigation Facility's Motion for Summary Judgment based on Plaintiff's Failure to Provide Any

3

Evidence of General Causation.  (Doc. No. 73) On December 4, 2013, the Sixth Circuit Court of Appeals entered an order reversing this Court's decision and remanded the matter for further proceedings.  (Doc. No. 81) The mandate issued on March 5, 2014.  (Doc. No. 82) On remand, Ezra filed a Motion to Transfer the Case to Nevada and the Litigation Facility filed a Motion to Certify the Issue to the Michigan Supreme Court.  (Doc. Nos. 85, 87) The Court denied both motions in an Order filed December 9, 2014.  (Doc. No. 95) The Court addresses all pending motions below.

It is noted that the renewed motions regarding the experts and the summary judgment were not previously ruled upon by the Court as argued by Ezra.  The Court's previous ruling that was before the Sixth Circuit of Appeals was limited to the issue of "general causation" and did not address the *Daubert* issues relating to the specific experts.

## II.   ANALYSIS

### A.   Experts

#### 1.   Expert Testimony Standard

In federal diversity actions, state law governs substantive issues and federal law governs procedural issues.  *Legg v. Chopra,* 286 F.3d 286, 289 (6th Cir. 2002).  Rules of evidence are deemed rules of procedure.  *Id.*  The Federal Rules of Evidence, rather

4

than state evidentiary laws, apply in federal diversity proceedings. *Id.; Barnes v. Owens-Corning Fiberglass Corp.,* 201 F.3d 815, 829 (6th Cir.2000); *Grossheim v. Freightliner Corp.,* 974 F.2d 745, 754 (6th Cir.1992); *Laney v. Celotex Corp.,* 901 F.2d 1319, 1320 (6th Cir.1990). The federal rules themselves provide that they "apply generally to civil actions and proceedings." Fed.R.Evid. 1101(b); *Legg v. Chopra,* 286 F.3d 286, 289 (6th Cir. 2002). The Sixth Circuit has stated that "[t]he admissibility of expert testimony is a matter of federal, rather than state, procedure." *Brooks v. Am. Broad. Cos.,* 999 F.2d 167, 173 (6th Cir.1993).

Rule 702 of the Rules of Evidence governs the admissibility of expert testimony. The trial court must determine whether an expert meets the requirements under Rule 702: 1) that the witness establish his expertise by reference to knowledge, skill, experience, training or education; 2) the proffered testimony is reliable in that it is based on scientific, technical or other specialized knowledge; and 3) the expert's testimony assists the trier of facts in understanding and disposing of the issues relevant to the case. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the United States Supreme Court set forth factors to be considered in determining whether to admit expert testimony involving scientific issues. The four factors are: 1) whether a theory or technique can be (and has been) tested; 2) whether the theory or technique has been subjected to peer review and

publication; 3) the known or potential rate of error in using a particular and scientific technique and the existence and maintenance of standards controlling the technique's operation; and 4) whether the theory or technique has been generally accepted in the particular scientific field. *Id.* at 593-94. The factors are neither definitive, nor exhaustive, and may or may not be pertinent to the assessment in any particular case, such as issues involving non-scientific matters . *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The factors will often be appropriate in determining reliability. *Id.* at 152. The trial court has broad latitude to determine whether these factors are reasonable measures of reliability in a particular case. *Id.* at 153.

The trial court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Pluck v. BP Oil Pipeline, Co.*, 640 F.3d 671, 677 (6th Cir. 2011) (qouting *Daubert,* 509 U.S. at 589). The trial court must consider "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* (quoting *Daubert,* 509 U.S. at 592-93). Although the trial court's inquiry is flexible, an expert who presents testimony must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Id.* (quoting *Best v. Lowe's Home Ctrs., Inc.,* 563 F.3d 171, 176-77 (6th Cir. 2009) and *Kuhmo Tire,* 526 U.S. at 152). Exclusion of expert testimony may result

6

in the entry of summary judgment and is reviewed on appeal for abuse of discretion. *Meridia Prods. Liab. Litig. v. Abbott Labs.,* 447 F.3d 861, 868 (6th Cir. 2006).

### 2.    Dr. Jerry Bush

The Litigation Facility seeks to exclude the expert opinion testimony by Dr. Jerry Bush raising the following reasons: 1) Dr. Bush is not qualified to offer causation opinions in this case; 2) Dr. Bush cites no evidence that Ezra was exposed to silicone gel; 3) Dr. Bush failed to consider contrary scientific evidence endorsed by the medical and scientific community; 4) Dr. Bush made no independent analysis or methodology of Ezra's claims; and, 5) Dr. Bush's opinions are speculative and based on temporal sequence only to prove causation.

The Litigation Facility argues that Dr. Bush does not even have the minimum qualifications required by the Federal Rule of Evidence 702 to offer opinions on the cause of autoimmune diseases.  The Litigation Facility asserts that Dr. Bush admits he has no expertise in the fields of immunology, rheumatology, autoimmune diseases or allergic reactions, or epidemiology.  (Bush Dep. at 53-54) The Litigation Facility claims that Dr. Bush is a part-time internal medicine doctor who has divided his workload into four roughly equal parts: internal medicine practice; prescribing the synthetic opiate Suboxene to drug users; conducting social security exams and drafting reports; and testifying as a paid expert witness in a wide range of cases, many

involving drug and alcohol intoxication issues. (Bush Dep. at 37, 39-41) Dr. Bush has never been retained, testified or designated as an expert regarding the effects of exposure to silicone breast implants or their components or relating to autoimmune disease issues. (Bush Dep. at 42, 58-59) Dr. Bush was retained one week before the March 31, 2011 expert deadline date only after a plaintiff in a companion case located him through Internet searches. The Litigation Facility claims Dr. Bush's report contains no discussion of autoimmune disease, no independent analysis regarding how or why plaintiff's conditions constitute autoimmune diseases and no reference to any texts, treatises, or authorities regarding autoimmune diseases. Dr. Bush admits to performing no research on the issues of whether silicones are capable of causing rheumatoid arthritis or any other type of autoimmune disease or symptoms and has not published any papers on the topic. (Bush Dep. at 59)

Ezra claims that this Court has addressed the expert issue in this case because it referenced Dr. Bush's opinion in its order, which was reversed by the Sixth Circuit. Ezra responds that Dr. Bush's credentials are impeccable because his analysis is based on Ezra's medical records and the findings and opinions of Ezra's treating physicians. Ezra claims that Dr. Bush is qualified because he is a licensed physician who is a Board Certified in Internal Medicine and has personally treated and referred breast implant patients whom he diagnosed with rheumatologic disease caused by breast

implants.    Ezra also notes that because the United States Social Security Administration has recognized silicone toxicity as a disorder and that she haw received compensation from the SSA since 1994, this means that silicone caused her injuries.   Ezra cites studies regarding how silicone gel has been known to migrate all around the body.

Plaintiffs' Liaison Counsel ("PLC") filed a combined response addressing all three experts.   As to Dr. Bush, the PLC argues that Dr. Bush's testimony that silicone could cause disease in certain genetically predisposed persons.   The PLC further argues that Dr. Bush's opinion is expressed within a reasonable degree of medical certainty that Ezra's autoimmune and related disorders were caused by the silicone breast implants.   The PLC claims that Dr. Bush has found in prior cases that he definitively diagnosed patients with autoimmune disease, with silicone breast implants being the cause of the problem.   The PLC further claims that Dr. Bush has an extensive 35-year experience as a physician.   Although Dr. Bush has conducted no research studies on the issue of silicone and autoimmune disease, the PLC argues asserts there is no such requirement barring Dr. Bush from testifying at trial and that this issue goes to credibility and weight, not admissibility.   The PLC further argues that epidemiology is not required to prove causation in the context of silicone implants and disease.

The Litigation Facility replies that Ezra and the PLC's response only recites the *Daubert* factors and then concludes that the experts satisfy the standard without further explanation or proof.  The Litigation Facility argues that Ezra and the PLC's citation of articles which were not mentioned or reviewed by Dr. Bush in his opinion cannot rehabilitate the expert.  As to findings by the SSA, the Litigation Facility argues that such findings are not admissible to prove causation.  *See, Orber v. Jain*, 2012 WL 1565299 at *2 (D.N.J. May 2, 2012).  The Litigation Facility claims that Ezra's experts failed to comply with a reliable methodology and that their *"ipse dixit"* conclusions are out of line with the medical consensus that silicone does not cause the types of injuries described by Ezra.  Merely because Dr. Bush holds a medical license, the Litigation Facility argues that this does not make him qualified to testify as an expert on the cause of plaintiff's illness or disease.

Applying the standard set forth in *Daubert*, the Court finds that Dr. Bush cannot be qualified as an expert to testify to the general or specific causation of Ezra's illness or disease.  As to the first factor–expertise or specialized knowledge, in his report, Dr. Bush states his specialty in Internal Medicine-Pharmacology-Toxicology.  (Doc. No. 96, Pg ID 4781) He received his medical degree in 1983 and has been in various private practice through the years.  (Doc. No. 96, CV, Pg ID 4784) Other than his deposition testimony that he has diagnosed patients with autoimmune disease, he has

10

not established his knowledge or training as to autoimmune disease, specifically whether breast implants or silicone gel causes such diseases. There is no doubt that Dr. Bush has the knowledge, skill, experience, training and education as to internal medicine, but no specific specialized knowledge as to whether breast implants or silicone gel causes autoimmune diseases. His conclusion that Ezra's autoimmune and related diseases were caused by her silicone breast implants is devoid of any analysis, other than referring to her medical history. Ezra's medical history can be testified to by her treating physicians.

Regarding the second factor–reliability of the proffered testimony based on scientific, technical or other specialized knowledge, Dr. Bush did not identify in his report how his conclusion that Ezra's autoimmune and related diseases were caused by the silicone breast implants. Dr. Bush did not cite to any theory which has been tested or been subjected to peer review and publication that supports his conclusion, again, other than summarizing Ezra's medical history, which requires no expert to review. Dr. Bush does not cite the methodology which he used for his conclusion, such as "differential diagnosis" or "differential etiology." *See Pluck*, 640 F.3d at 678 (An expert opinion's methodology must meet the standard of reliability required in *Daubert*.). There was no causation analysis in Dr. Bush's report, other than a summary of Ezra's medical history.

The third factor–whether the expert's testimony assists the trier of facts–the Court finds Dr. Bush's testimony would not so assist the jury since there is no causation analysis in the report, other than summarizing Ezra's medical history.

Based on the above analysis under Rule 702 and *Daubert* the Court finds that Dr. Bush's testimony is excluded as unreliable.

### 3. Dr. Justus Fiechtner

The Litigation Facility claims that Dr. Justus Fiechtner's qualifications render his opinions unreliable. Other than being a practicing rheumatologist, Dr. Fiechtner has no expertise or publications relating to breast implants or silicone. His one-page report completed within two hours is insufficient, according to the Litigation Facility.

The Litigation Facility argues that Dr. Justus Fiechtner's opinions are contrary to the scientific evidence widely endorsed by the medical and scientific community, that his opinions are based on possibilities, not probabilities, that he merely assumed, without more, that Ezra was exposed to silicone gel manufactured by Dow Corning, that his approach and lack of methodology make his opinions unreliable, and that his genetic-susceptibility hypothesis is mere speculation. The Litigation Facility notes that Dr. Fiechtner is a Fellow with the American College of Rheumatology ("ACR"). When asked at his deposition whether he agrees with the ACR public statement that the scientific research "provide[s] compelling evidence that silicone implants expose

12

patients to no demonstrable additional risk for connective tissue or rheumatic disease,"
Dr. Fiechtner agreed with the statement. (Fiechtner Dep. at 34) The Litigation Facility
asserts that Dr. Fiechtner acknowledged awareness of the peer-reviewed studies
finding no association between silicone breast implants and the connective tissue
diseases and symptoms studied and agreed that no scientific evidence to show a direct
link between silicone and any type of autoimmune disease. (Fiechtner Dep. at 24, 33-
34) The Litigation Facility claims that Dr. Fiechtner did not undertake to review and
analyze his conclusion before issuing his opinion. The Litigation Facility asserts that
Dr. Fiechtner performed all his work for Ezra, a one page report, in just two hours.

The Litigation Facility claims Dr. Fiechtner's opinion does not meet the
reasonable degree of medical certainty or probability test in that he could not admit
that Ezra's symptoms were caused by silicone exposure by more than 51 percent.
(Fiechtner Dep. at 36-37) The Litigation Facility claims that Dr. Fiechtner's opinion
was based on an "association" between silicone breast implants and autoimmune
diseases and symptoms, but not necessarily causation of the diseases and symptoms.
(Fiechtner Dep. at 25) The Litigation Facility further argues that Dr. Fiechtner failed
to determine whether Ezra was injected by silicone manufactured by Dow Corning
and that he merely assumed such in his opinions. The Litigation Facility asserts that

Dr. Fiechtner's theory of genetic-susceptibility is mere speculation since he presented no methodology, analysis, data or any general scientific studies regarding this theory.

Ezra responds that the record clearly shows Dr. Fiechtner's statements and assertions are based on sufficient facts and data to opine on her condition and that he used generally accepted principles and methods. Ezra asserts that the Litigation Facility is using obsolete, scientifically unsound findings of medical associations who misinterpreted and contradicted overwhelming scientific consensus and peer-reviewed research concluding that silicone gel causes autoimmune disease. Ezra claims that the defense is intentionally ignoring what reasonably intelligent, honest medical people have known and proven: that you can't get sick unless you have a genetic propensity to get sick. Given that Ezra has been adjudicated by the SSA as disabled by organic brain syndrome caused by silicone toxicity, the trier of fact need solely rely on common sense rather than relying on expert witness testimony for issues pertaining to general or specific causation in this case.

The PLC asserts that Dr. Fiechtner testified at his deposition that "silicone played a role in triggering their diseases specifically in these individuals who probably have genetic predisposition to autoimmune disease." (Fiechtner Dep. at 47) The PLC argues that Dr. Fiechtner relied on specific scientific studies supporting his opinion regarding antibody formulation and in his extensive experience as a doctor and his

14

review of published literature.  The PLC claims that Dr. Fiechtner's experience includes as a clinical professor of medicine at Michigan State University and has been Board Certified in internal medicine and rheumatology for 35 years, publishing numerous scientific articles in peer review journals.  The PLC argues that although Dr. Fiechtner did not opine that silicone is the only cause of Ezra's disease, he opined that silicone does have a factor to play in individuals with a genetic susceptibility. (Fiechtner Dep. at 36)

Applying the standard set forth in *Daubert*, the Court finds that Dr. Fiechtner cannot be qualified as an expert to testify the general or specific causation of Ezra's illness or disease.  As to the first factor–expertise or specialized knowledge, the Court finds that based on his specialty as a rheumatologist and his experience, currently as a clinical professor at Michigan State University, Dr. Fiechtner has the expertise or specialized knowledge in the area of rheumatology, which is relevant in this case.

Regarding the second factor–reliability of the proffered testimony based on scientific, technical or other specialized knowledge, Dr. Fiechtner's conclusion is that Ezra is "predisposed" to autoimmune disease and that based on this, the silicone gel could have caused such.  However, Dr. Fiechtner admitted that his report does not set forth any methodology or any analysis or reasoning.  (Fiechtner Dep. at 20) He admits to merely reading the medical records to provide his conclusions.  (Fiechtner Dep. at

15

15-18) Dr. Fiechtner admitted at his deposition that the silicone caused autoimmune disease was not more than 50 percent.  An expert attempting to establish proximate cause must state his opinion in terms of probability, meaning more than 50 percent likelihood.  *Davison v. Cole Sewell Corp.,* 231 F. App'x 444, 449 (6th Cir. 2007). Dr. Fiechtner merely testified only to the "association" and "played a role" between silicone breast implants and Ezra's autoimmune diseases and symptoms.  (Fiechtner Dep. at 25, 47) An expert is not permitted to speculate since Rule 702 requires more than subjective belief or unsupported speculation. *See Rodrigues v. Baxter Healthcare Corp.,* 567 F. App'x 359, 361 (6th Cir. 2014).  As to Fiechtner's opinion of genetic propensity for autoimmune disease, Fiechtner did not cite any support for this theory and did not cite any medical authority for such.

The third factor–whether the expert's testimony assists the trier of facts–the Court finds Dr. Fiechtner's testimony of genetic predisposition would not so assist the jury since he cites no support for this opinion.  Based on the above analysis under Rule 702 and *Daubert* the Court finds that Dr. Fiechtner's testimony is excluded as unreliable.

### 4.    Pierre Blais, Ph.D.

The Litigation Facility seeks to exclude the expert testimony of Pierre Blais, Ph.D.  The Litigation Facility first argues that although Dr. Blais admits he is not

qualified to offer medical causation opinions, he opines that breast implants have injurious potential and that they degrade and injure. The Litigation Facility next argues that Dr. Blais' opinion that breast implants rupture is irrelevant since there is no evidence that Ezra's implants ruptured. As to Dr. Blais' opinion that the silicone gel has impurities, by-products formed incidental to implant manufacturing processes and possible chemical degradation, he does not opine that there is a nexus between such issues and any harm to Ezra. Finally, the Litigation Facility argues that Dr. Blais does not identify any scientific support for his conclusions and does not specify any methodology that he used to reach his conclusions. The Litigation Facility notes that courts have routinely excluded Dr. Blais' opinions in breast implant litigation.

Ezra responds that the Litigation Facility's conduct is "despicable" as to its lack of knowledge and respect to claimants and its failure to disclose the known risks the claimants were facing. Ezra claims that the Litigation Facility's reference to Dr. Blais as a "crusader" for a cause is not a justification to exclude his opinions, nor is it a negative trait that should be demeaned. Ezra asserts that Dr. Blais repeatedly stated in his deposition that he is not a medical doctor that can offer specific causation opinions on specific patients. Ezra claims that Dr. Blais' opinions, statements and assertions are based on sufficient facts and data to opine on the issues before the Court, and that his methods are reliable and supported by copious peer reviewed

17

medical literature.  Ezra also claims that contrary to the medical record, Ezra's implants were ruptured, as noted in an August 5, 1993 report.  As to the claim that courts have routinely excluded Dr. Blais' opinions in breast implant litigation, this statement is patently false.

The PLC argues that Dr. Blais should be allowed to explain the chemical properties of silicone gel breast implants to the jury.  As noted by Ezra, her implants did rupture.  Dr. Blais' testimony would be relevant to the issues before the jury.

Applying the standard set forth in *Daubert*, the Court finds that Blais cannot be qualified as an expert to testify the general or specific causation of Ezra's illness or disease.  As to the first factor–expertise or specialized knowledge, the Court finds that Dr. Blais is specialized in the field related to chemical properties of silicone gel.

Regarding the second factor–reliability of the proffered testimony based on scientific, technical or other specialized knowledge, it could be that Dr. Blais can testify to the properties of silicone gel.  However, Dr. Blais cannot opine that the silicone gel caused Ezra's diseases since he admits that he is not a medical doctor. (Blais Dep. at 84, 98)  His report discusses the toxicological significance of defects in breast implants, the systemic impact and damages to certain body systems. Although Ezra denies that Blaise has been excluded from other breast implant cases as an expert, Courts have held and noted that Blais' opinion on the alleged defect of

18

implants as unreliable. *See Grant v. Bristol-Myers Squibb*, 97 F. Supp. 2d 986, 991 (D. Ariz. 2000) ("Many other courts have excluded Blais' opinion on the alleged defect of implants finding it unreliable and not accepted in the general scientific community as to systemic injury caused by silicone breast implants."). Based on his own admission that he is not a medical doctor, the Court finds that he cannot testify as to whether the defects of silicone breast implant causes systemic injury. Blais cannot testify as to whether the chemical in the breast implants caused Ezra's injuries since he would be speculating. As noted above, an expert is not permitted to speculate since Rule 702 requires more than subjective belief or unsupported speculation. *See Rodrigues,* 567 F. App'x at 361.

The third factor–whether the expert's testimony assists the trier of facts–the Court finds Dr. Blais' testimony as to the chemical properties of breast implants would assist the jury, but not as to whether such would cause injuries since such an opinion would be speculative. Based on the above analysis under Rule 702 and *Daubert* the Court finds that Dr. Blais' testimony be allowed as to the chemical properties of breast implants. However, Dr. Blais' testimony is excluded as unreliable as to the cause of Ezra's injuries.

### B.      Renewed Motion for Summary Judgment

#### 1.      Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A

20

court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### 2.    Experts

The Litigation Facility moves for summary judgment should the Court grant its motions to exclude all of Ezra's experts on the causation issue. The Litigation Facility argues that none of the experts are able to testify that the Dow Corning breast implant or gel caused Ezra's injuries. The Litigation Facility asserts Ezra must establish causation, on which she has the burden of proof, and is unable to do so without an expert testifying on whether the breast implant and/or its materials caused her injury.

Ezra responds that based on the Sixth Circuit opinion reversing this Court's previous ruling, summary judgment is not warranted. Ezra claims that the renewed motion for summary judgment demonstrates the Litigation Facility's attempt to discredit the opinions of the proposed experts. Ezra claims that since she has been awarded benefits by the SSA the issue of causation has been determined.

In Michigan, causation is an essential element of any product liability action. M.C.L. 600.2945(h); *Mascarenas v. Union Carbide Corp.,* 196 Mich. App. 240, 249 (1992), overruled in part on other grounds, *Buckler v. Automatic Lawn Sprinkler Co.,* 479 Mich. 378 (2007). Mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish

a causal link between the two. *Jordan v. Whiting Corp.,* 396 Mich. 145, 151 (1976);

*Hartsfield v. United Technologies Otis Elevator Co., Inc.,* 986 F.Supp. 449, 452 (E.D.

Mich. 1997). In a products liability action, "expert testimony is indispensable to

prove causation where 'it is to the scientific community that the law must look for the

answer.'" *Schaendorf v. Consumers Energy Co.,* 2009 WL 563904 (Mich. App.

2009). A physician's opinion may be inadmissible but only if the opinion is based on

an unsupported personal opinion of causation. *Turpin v. Merrell Dow*

*Pharmaceuticals, Inc.,* 959 F.2d 1349, 1360 (6th Cir. 1992).

Generally, in a toxic-tort case, a plaintiff must establish both general and

specific causation through proof that the toxic substance is capable of causing, and did

cause the plaintiff's alleged injury. *Pluck,* 640 F.3d at 676-77; *Trice v. Oakland*

*Development Ltd. Partnership,* 2008 WL 7488023, *11 (Mich. App. Dec. 16, 2008).

Both causation inquiries–general and specific–involve scientific assessments that must

be established through the testimony of a medical expert. *Pluck,* 640 F.3d at 677.

"Without this testimony, a plaintiff's toxic tort claim will fail." *Id.* (internal quotation

and citation omitted). General causation is established by demonstrating, often

through a review of scientific and medical literature that exposure to a substance can

cause a particular disease, while specific causation is established by demonstrating

that a given exposure is the case of an individual's disease. *In re Meridia Prods. Liab.*

22

*Lit.,* 328 F. Supp. 2d 791, 798 (N.D. Ohio) (citing *Sterling v. Velsicol Chem., Corp.,* 855 F.2d 1188 (6th Cir. 1988)); Federal Judicial Center, Reference Manual on Scientific Evidence 444 (2d ed. 2000); *Trice,* 2008 WL 7488023 at 11.

Because the Court has excluded the expert testimonies of Drs. Bush, Fiechtner and Blais as to whether the breast implant or gel caused Ezra's injuries, summary judgment must be granted in the Litigation Facility's favor since Ezra has presented no other experts who will testify that Dow Corning silicone cause diseases or other symptoms.

## III.   REQUEST FOR SANCTIONS AND JUDICIAL NOTICE

### A.   Sanctions

In her "request," Ezra seeks sanctions because the Litigation Facility and its attorneys have lied to the Court. Ezra requests that the Court take judicial notice of the facts she claims have been proven.

The Litigation Facility responds that its motions and briefs have been well-founded and that its attorneys have not used deceitful and inappropriate tactics as alleged by Ezra.

Generally, Rule 11 provides that prior to requesting/filing a Motion for sanctions under this rule, the party must serve notice to the opposing party under the safe harbor provision of Rule 11. Fed. R. Civ. P. 11(c)(1)(A). Rule 11(c) states that

23

the motion shall not be filed if not submitted to the opposing party. Pursuant to the "safe harbor" provision in Rule 11, a party seeking sanctions under the rule must first serve notice to the opposing party that such a motion will be filed.

Rule 11 permits sanctions if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Merritt v. Int'l Ass'n of Mach. and Aerospace Workers,* 613 F.3d 609, 626 (6th Cir. 2010). Rule 11 sanctions are warranted if the attorney's conduct was unreasonable under the circumstances. *Andretti v. Borla Performance Indus., Inc.,* 426 F.3d 824, 833 (6th Cir. 2005). The grant of sanctions must be reviewed in the context of the litigation history of the action. *Merritt,* 613 F.3d at 627. The central purpose of Rule 11 is to deter baseless filings in the district court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

Ezra does not indicate whether her counsel has abided by the "safe harbor" provision of Rule 11 by serving the instant request prior to filing the request with the Court. In any event, the Court finds that the Litigation Facility and its counsel has not conducted itself outside the rules and procedures of the Court. Ezra's claims that the Litigation Facility and its counsel have lied to the Court is speculative. Ezra has not

24

submitted any evidence of such, other than her disagreement with the Litigation Facility's arguments.

### B.    Judicial Notice

Federal Rules of Evidence 201 governs judicial notice of "adjudicative facts." "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b). "Judicial notice is generally not the appropriate means to establish the legal principles governing the case." *Toth v. Grand Trunk R&R,* 306 F.3d 335, 349 (6th Cir. 2002). Judicial notice is only appropriate if the matter is beyond reasonable controversy. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 465-66 (6th Cir. 2014).

Ezra requests that the Court take judicial notice that: 1) silicone gel has been proven to cause detrimental effects and disease when released into the body by way of rupture of breast implants and gel bleed; 2) that plaintiff's breast implant was "ruptured"; 3) that Dow Corning knew that silicone gel received by Ezra presented risks of exposure to silicone gel by way of rupture and gel bleed; and, 4) that Dow Corning has a history of selling gel to its competitors as well as the mechanism by which the host body tissue is exposed to silicone gel by "rupture and bleed."

The Court cannot take judicial notice of the facts as requested by Ezra. These allegations are not beyond reasonable controversy. These allegations are not generally known within this Court's territorial jurisdiction.

## IV.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Litigation Facility's Motion to Exclude Expert Opinion of Dr. Jerry Bush (#96, 1/16/15) is GRANTED.

IT IS FURTHER ORDERED that the Litigation Facility's Motion to Exclude Expert Opinions of Dr. Justus Fiechtner (#97, 1/16/15) is GRANTED.

IT IS FURTHER ORDERED that the Litigation Facility's Motion to Exclude Expert Opinions of Pierre Blais, Ph.D. (#98, 1/16/15) is GRANTED.

IT IS FURTHER ORDERED that the Litigation Facility's Renewed Motion for Summary Judgment (#99, 1/16/15) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff Ezra's Request for Sanctions and to take Judicial Notice of Proven Facts (#107, 2/13/15) is DENIED.

IT IS FURTHER ORDERED that the Motion for Leave to File Excess Pages (#104, 2/12/15) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Leave to File Excess Pages (#109, 2/27/15) is GRANTED.

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.


_/s/ DENISE PAGE HOOD_
DENISE PAGE HOOD
United States District Judge

DATED: September 30, 2015